01
02
03
04
05
06
07
08
09
10
11
12
13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PETER JASPER SCHULTE,                  )
                                       )      Case No. C06-436-MJP-JPD
            Plaintiff,                 )
                                       )
      v.                               )
                                       )      REPORT AND RECOMMENDATION
JO ANNE B. BARNHART, Commissioner,     )
Social Security Administration,        )
                                       )
            Defendant.                 )
_____)

14      Plaintiff Peter Jasper Schulte appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner"), which denied plaintiff's application for

16   Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

17   § 1382(a), after a hearing before an Administrative Law Judge ("ALJ").  For the reasons set

18   forth below, the Court recommends that the Commissioner's decision be REVERSED and

19   REMANDED for further proceedings consistent with the Court's instructions.

20                      I.   FACTS AND PROCEDURAL HISTORY

21      Plaintiff is a fifty-six year old divorced man with a high school education and an

22   unspecified amount of college credits towards a bachelor's degree in computer science.

23   Administrative Record ("AR") at 68, 183.  He has previously worked as a software developer,

24   lumberyard worker, community college tutor and teaching assistant, tile-setter, finish

25   carpenter, and a banquet server.  AR at 112, 129.  Plaintiff was last gainfully employed in

26   2002.  AR at 104.  He currently receives public assistant benefits.  AR at 49.

REPORT AND RECOMMENDATION
PAGE - 1

01    On February 3, 1995, plaintiff was convicted of first degree child molestation, a crime

02 for which he spent eighty-nine months in prison. AR at 60-65. He was released on December

03 28, 2001, but later returned to prison in March and September through November, 2002, after

04 violating the conditions of his release. AR at 105-07, 219. Plaintiff is classified as a Level 3

05 Sex Offender, is unable to take jobs involving direct or indirect contact with vulnerable

06 populations or in a medical setting, and must inform any potential employment supervisors of

07 his sex offender status. AR at 80-81, 225-30, 257.

08    Plaintiff has a past history of drug and alcohol abuse, but has participated in

09 rehabilitation programs and asserts that he no longer has a substance abuse problem. AR at

10 257-58, 433. Plaintiff lives alone and infrequently leaves his apartment. AR at 437, 439-41.

11 Upon release from prison, plaintiff was placed into a community supervision program. AR at

12 225-30.   Per the terms of this supervision, plaintiff must avoid locations where minors might

13 congregate, keep a masturbation log, dictate into a hand-held recorder his physical

14 whereabouts, and detail any sexual fantasies or impulses he experiences during a time certain.

15 AR at 225-30, 257; *see also* AR at 78, 80-81 (sentencing court's summary of community

16 placement requirements). Among other restrictions, he cannot drive unless accompanied by

17 an informed companion, and may use public transportation unless it becomes crowded with

18 children, upon which time he must promptly exit. AR at 257. Since March 2003, plaintiff has

19 attended a weekly mental health treatment program at Seattle Mental Health Center. AR at

20 433.

21    On April 25, 2003, plaintiff applied for Title XVI benefits alleging an onset date of

22 December 1, 2002. AR at 47-50. He initially alleged the following impairments: pedophilia,

23 narcissistic personality disorder, obsessive compulsive disorder, and extreme anxiety. AR at

24 111. Plaintiff asserts that his mental impairments have kept him from obtaining and

25 maintaining employment of any kind. AR at 439-41.

26

REPORT AND RECOMMENDATION
PAGE - 2

01    The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 24-

02  26, 29-31.  On August 2, 2005, a disability hearing was held before the ALJ, who concluded

03  that plaintiff was not disabled and denied benefits based on her finding that plaintiff could

04  perform both his past relevant work and work existing in significant numbers in the national

05  economy.  AR at 7.  Plaintiff's administrative appeal of the ALJ's decision was denied by the

06  SSA Appeals Council, AR at 6-8, making the ALJ's November 8, 2005, ruling the "final

07  decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On April 6,

08  2006, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt.

09  No. 1.

10                                   II.   JURISDICTION

11    Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

12  405(g) and 1383(c)(3).

13                              III.   STANDARD OF REVIEW

14    This Court, pursuant to 42 U.S.C. § 405(g), may set aside the Commissioner's denial

15  of social security benefits when the ALJ's findings are based on legal error or not supported

16  by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214

17  (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  "Substantial

18  evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence that

19  a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*,

20  402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The

21  ALJ is responsible for determining credibility, settling conflicts in medical testimony, and

22  resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

23  Cir. 1995).  While the Court is required to examine the record meticulously as a whole, it may

24  neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas

25  v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more

26  than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

REPORT AND RECOMMENDATION
PAGE - 3

01    As to specific remedies, this Court has discretion to remand for further proceedings or

02 to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Remand is

03 appropriate where additional proceedings would remedy defects in the ALJ's decision,

04 *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989), and where the Commissioner is in a

05 better position to evaluate the evidence. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.

06 1990). An award of benefits is preferred where "the record has been fully developed and

07 further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*,

08 298 F.3d 1072, 1076 (9th Cir. 2002).

09                              IV.   EVALUATING DISABILITY

10    As the claimant, Mr. Schulte bears the burden of proving that he is disabled within the

11 meaning of the Social Security Act ("the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

12 Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

13 any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

14 expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§

15 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant is disabled

16 under the Act only if his impairments are of such severity that he is unable to do his previous

17 work, and cannot, considering his age, education, and work experience, engage in any other

18 substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

19 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

20    The Commissioner has established a five-step sequential evaluation process for

21 determining whether a person is disabled within the meaning of the Act. *See* 20 C.F.R. §§

22 404.1520, 416.920. The claimant bears the burden of proof for steps one to four. At step

23 five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled or not

24 disabled at any step in the sequence, the inquiry ends without need to consider subsequent

25 steps.

26

REPORT AND RECOMMENDATION
PAGE - 4

01    Step one determines whether the claimant is presently engaged in substantial gainful

02  activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he

03  is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that

04  he has one or more medically severe impairments, or combination of impairments, that limit

05  his physical or mental ability to do basic work activities.  If the claimant does not have such

06  impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does

07  have a severe impairment, the Commissioner moves to step three to determine whether the

08  impairment meets or equals any of the listed impairments described in the regulations.  20

09  C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals a listing

10  for the twelve-month duration requirement is disabled.  *Id.*

11    When the claimant's impairment neither meets nor equals one of the impairments listed

12  in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

13  residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

14  Commissioner evaluates the physical and mental demands of the claimant's past relevant work

15  to determine whether he can still perform that work.  *Id.*  If the claimant is able to perform his

16  past relevant work, he is not disabled; if the opposite is true, the burden shifts to the

17  Commissioner at step five to show that the claimant can perform some other work that exists

18  in significant numbers in the national economy, taking into consideration the claimant's RFC,

19  age, education, and work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the

20  Commissioner finds the claimant is unable to perform other work, the claimant is disabled and

21  benefits may be awarded.

22                               V.  DECISION BELOW

23

24

25

26    [1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION
PAGE - 5

01      In her decision of November 8, 2005, the ALJ found that although plaintiff satisfied

02  the first two disability steps, his severe impairments did not equal or exceed a listing at step

03  three.  She further found that plaintiff could return to his former job as a finish carpenter, and

04  that, in the alternative, plaintiff retained an RFC capable of performing unskilled jobs at all

05  levels, with mental demands comprising of "the ability to manage simple instructions, tasks,

06  and usual work situations, and respond appropriately to co-workers, supervisors, and changes

07  in routine."  AR at 20 (citing SSR 85-15, 1985 WL 56857).[2]  The ALJ further noted that such

08  jobs "ordinarily involve working with objects rather than data or people," and thus would

09  likely not involve the general public or vulnerable populations.  AR at 20.  Because she

10  concluded that there were jobs in the economy that a person with plaintiff's RFC could

11  perform, the ALJ found that the plaintiff was not disabled by application of Medical-

12  Vocational Rule 204.00.  Specific findings included the following:

13          1.      The claimant has not engaged in substantial gainful activity since the
                    alleged onset date [of disability].
14

15          2.      The claimant has pedophilia; and anxiety disorder NOS; and a
                    personality disorder with narcissistic and antisocial features.  These
                    impairments are severe, but do not meet or equal the criteria of any of
16                  the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix No.
                    1.
17

18          3.      The claimant's statements concerning his impairments and limitations
                    are not entirely credible.

19          4.      The claimant retains the residual functional capacity to a residual
                    functional capacity without physical limitations.  He is somewhat
20                  limited at interaction with supervisors, but he is able to do so
                    sufficiently well to maintain employment.
21

22          5.      The claimant's past relevant work as a finish carpenter did not require
                    work functions precluded by his limitations, and the claimant's
                    impairments do not prevent him from performing his past relevant
23                  work.

24  ────────────────────

25      [2] Social Security Rulings do not have the force of law.  Nevertheless, they "constitute
    Social Security Administration interpretations of the statute it administers and of its own
26  regulations," and are given deference "unless they are plainly erroneous or inconsistent with
    the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

REPORT AND RECOMMENDATION
PAGE - 6

01
02

6.      The claimant was born on May 29, 1949, and he has at least a high
        school education.

03
04

7.      If the claimant could not do his past relevant work, 20 C.F.R. §
        416.969, and rule 204.00 of Appendix II would direct a conclusion that
        he is not disabled.

05
06
07

8.      Although claimant has additional non-exertional limitations, they do not
        substantially erode the broad occupational base of unskilled work.  His
        medical and vocational factors coincide with the framework of rule
        204.00 and he is capable of performing other work that exists in
        substantial numbers.  He is therefore not disabled on that ground as
        well.

08
09

9.      The claimant is not under a disability, as defined in the Social Security
        Act.

10

AR at 24-25.

## VI.   ISSUES ON APPEAL

11
12
13
14
15
16
17
18

The plaintiff's opening brief raises a number of complaints about the decision below.
In response, the Commissioner concedes error as to step four, agreeing with the plaintiff that
the ALJ did not adequately develop the record to assess the physical and mental demands of
plaintiff's past work as a finish carpenter when determining whether plaintiff could return to
that prior relevant work.  Because this error is not harmless, the Court orders that it be
corrected on remand.  This in turn necessitates a reassessment of plaintiff's RFC.  As a result,
three primary allegations of error remain contested:

19

1.      Did the ALJ properly evaluate the medical evidence of record?

20

2.      Did the ALJ err in her analysis of plaintiff's credibility?

21

3.      Did the ALJ err by failing to call a vocational expert at step five?

22

## VII.   DISCUSSION

23

A.      The ALJ Erred in Her Evaluation of the Medical Evidence

24
25
26

Plaintiff asserts that the ALJ failed to give proper weight to the opinions of the
Commissioner's examining physician, Dr. Marcia Davenport Kent, and rejected her opinions
without a specific or legitimate basis.  Dkt. No. 15 at 8-11.  The Commissioner disagrees, and

01 argues that the ALJ's reasons for rejecting Dr. Kent's conclusions were specifically outlined

02 and supported by substantial evidence—namely, Dr. Kent's *actual* conclusions, plaintiff's

03 admissions during mental health therapy, plaintiff's 30-year employment history, and the

04 contrary opinions of state agency non-examining psychologists Kent Reade and Harry Nelson.

05 *See, e.g.*, Dkt. No. 17 at 8 ("The ALJ properly rejected Dr. Kent's opinion that Plaintiff was

06 unable to work because of intrusive fantasies and deviant thoughts because it was inconsistent

07 with the record as a whole.").

08 "[G]reater weight is accorded to the opinion of an examining physician than a

09 non-examining physician." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also*

10 20 C.F.R. § 416.927(d)(1).  However, under certain circumstances, an examining physician's

11 opinion can be rejected, whether or not that opinion is contradicted.  *Magallanes*, 881 F.2d at

12 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give

13 clear and convincing reasons for doing so if the opinion is not contradicted by other evidence,

14 and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.

15 1998).  Such reasons must at all times be supported by substantial evidence.  *Id.*

16 Dr. Kent conducted a detailed evaluation of Mr. Schulte on June 30, 2003, which

17 included a review of eighteen treatment and court related documents.  Dr. Kent diagnosed

18 plaintiff with pedophilia,[3] voyeurism, poly-substance dependence in long term remission,

19 anxiety NOS, and cluster B traits including narcissistic and antisocial personality traits.  AR at

20 260.  While Dr. Kent noted that plaintiff "should be able to do repetitive tasks as well as

21 detailed and complex tasks with ease," she found that plaintiff would "have significant

22

23

___

24 [3]  The *Diagnostic and Statistical Manual of Mental Disorders IV* defines pedophilia

25 as a paraphilia—that is, a disorder causing "clinically significant distress or impairment in social, occupational, or other important areas of functioning." AMERICAN PSYCHIATRIC

26 ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 535 (Text. Rev., 4th ed. 2000).

REPORT AND RECOMMENDATION
PAGE - 8

01  difficulty interacting with the public and supervisors." AR at 261. Dr. Kent further opined as

02  follows:

03    In the absence of sexual deviancy which puts him at risk to the community, he
      may have significant job skills. However his risk for re-offense *and* constant
04    obsession with sexuality, masturbation, voyeurism, and pedophilia pose
      significant barriers to functioning successfully in the work place.
05    . . . .

06    Mr. Schulte's work day and work week will be interrupted by fantasies, sexual
      deviancy, difficulty with honesty and communication with others.

07  *Id.* (emphasis added).

08

09          The ALJ first rejected Dr. Kent's conclusion that plaintiff would have significant

10  barriers to functioning in the workplace because, in the opinion of the ALJ, that conclusion

11  was limited to plaintiff's "label as a sex offender and his probation restrictions, rather than the

12  limitations imposed by his impairments." AR at 18.

13          The ALJ erred. Dr. Kent did not limit her functional assessment opinions to plaintiff's

14  sex offender label, stigma, or probation restrictions. To the extent this limitation was made by

15  the ALJ herself, it must be corrected upon remand, for an ALJ cannot substitute her own

16  opinion for that of a medical expert by disregarding or manipulating the evidence of record.

17  *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). In fact, Dr. Kent did not base her

18  opinion solely on her diagnosis of the mental illness known as pedophilia. Rather, Dr. Kent's

19  opinion states that plaintiff's risk of re-offense "and constant obsession with sexuality,

20  masturbation, voyeurism, *and* pedophilia" presented significant barriers to functioning in the

21  workplace. AR at 261 (emphasis added). The fact that the same mental impairments which

22  might prevent plaintiff from maintaining employment may have also contributed to his

23  incarceration does not minimize those impairments for the purposes of determining disability

24  under the Act. Dr. Kent's report links plaintiff's mental impairments—later found to be severe

25  by the ALJ—to the resulting functional limitations quoted above. "[O]nly by . . .

26

REPORT AND RECOMMENDATION
PAGE - 9

01 mischaracterizing [Dr. Kent's] statements can one create any apparent inconsistency" or

02 limitation in her diagnosis. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

03      The ALJ also rejected Dr. Kent's functional limitations assessment by simply ignoring

04 the evidence of record.  Specifically, although Dr. Kent found that claimant's work would be

05 interrupted by his mental impairments, the ALJ rejected this finding, concluding that "there is

06 no evidence that the claimant's fantasies and deviant sexual thoughts have ever interrupted his

07 work activities." AR at 18.  Again, the ALJ erred.  The record shows that plaintiff has been

08 arrested in the past for committing a sex crime—child molestation—while at work.  AR at

09 181-82 (Department of Corrections Records).

10      Finally, the ALJ rejected Dr. Kent's opinions based in part on the findings of Drs. Kent

11 Reade and Harry Nelson of the State Disability Determination Service.  These state agency

12 psychologists concurred in Dr. Kent's diagnoses of pedophilia, voyeurism, poly- substance

13 abuse in remission, and cluster B traits, although to a lesser extent.  AR at 374-90.  Drs.

14 Reade and Nelson found that plaintiff was moderately limited in his ability to respond to

15 supervisors, moderately limited in maintaining social functioning, and mildly limited in

16 maintaining concentration, persistence, or pace.  AR at 375, 388.  Nevertheless, the ALJ

17 rejected the application of a moderate limitation in social functioning by once again attributing

18 to himself or the state agency physicians the conclusion that "the assessment of a moderate

19 limitation in social functioning relates to [plaintiff's] problems with sexually abusing children

20 and the inability to be exposed to children." AR at 19.[4]

21      This, too, constitutes error.  First, the report of the state agency physicians, like that of

22 Dr. Kent, simply does not limit the "moderate" social functional limitation findings in *both*

23 criteria A and criteria B to criminal sexual abuse and the physical restrictions resulting

24 therefrom.  That statement refers to Dr. Kent's finding of "*significant* barriers to

25

26     [4] The Court is unsure from exactly where the ALJ extracted this information, because she made no specific citation to the administrative record when doing so.

REPORT AND RECOMMENDATION
PAGE - 10

01  functioning . . . in the workplace"—a finding in which the state agency physicians did not

02  concur—and must be read in conjunction with Dr. Reade and Dr. Nelson's RFC ultimate

03  determination that plaintiff was moderately limited in his "ability to accept instructions and

04  respond appropriately to criticism from supervisors." AR at 375, 376. Second, even

05  assuming that Drs. Reade and Nelson *did* read Dr. Kent's social functioning assessment as

06  limited to legal and not psychiatric consequences, the Court finds that such a determination

07  does not contain the specificity necessary to outweigh the opinions of Dr. Kent. A non-

08  examining physician's nonspecific rejection of an examining physician's opinions cannot later

09  become, absent other evidence, the "specific and legitimate" reasons of the ALJ. *Cf. Reddick*,

10  157 F.3d at 725 ("ALJ may not reject [contradicted] opinion [of examining physician] without

11  providing specific and legitimate reason supported by substantial evidence in the record."); *see*

12  *also Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) ("The opinion of a

13  nonexamining physician cannot by itself constitute substantial evidence that justifies the

14  rejection of the opinion of . . . an examining physician.") (internal quotation omitted).

15      In sum, the ALJ's reasons for rejecting Dr. Kent's conclusions were neither specific

16  nor legitimate. Nor were such reasons supported by substantial evidence. Additional

17  arguments offered in defendant's brief were not made by the ALJ, and thus will not be

18  addressed by this Court. Because the ALJ's errors in this regard led to an adverse disability

19  finding, they were not harmless. On remand, the ALJ should credit and fully incorporate the

20  opinions of Dr. Kent when reviewing the medical opinions of record and reassessing the

21  plaintiff's RFC. *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) ("[B]ecause the

22  ALJ fail[ed] to provide adequate reasons for rejecting the opinion of [an] examining physician,

23  we credit that opinion as a matter of law.") (first and third alterations added). Furthermore,

24  the ALJ should not attempt to contradict the functional limitation assessments of examining

25  and non-examining physicians by unsupported statements or medical evidence of his own.

26  *Lester v. Chater*, 63 F.3d 1453, 1463-64 (9th Cir. 1995).

REPORT AND RECOMMENDATION
PAGE - 11

01

       B.      The ALJ Should Re-evaluate the Plaintiff's Subjective Symptom Testimony on Remand

02

03

Plaintiff argues that the ALJ improperly discredited his subjective complaints and

found plaintiff not credible based on insufficient "general findings." Dkt. No. 15 at 16-17.

04

Defendant argues that the ALJ properly found that plaintiff's subjective allegations of

05

disability were not entirely credible based on plaintiff's documented history of deceptive

06

behavior and manipulation during treatment, inconsistent testimony, and reported effectiveness

07

of medical treatment.

08

Credibility determinations are particularly the province of the ALJ. *Andrews*, 53 F.3d

09

at 1043. Nevertheless, when an ALJ discredits a claimant's subjective testimony, she must

10

articulate specific and adequate reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972

11

(9th Cir. 2006). The determination of whether to accept a claimant's subjective symptom

12

testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at

13

1281; SSR 96-7p. First, the ALJ must determine whether there is a medically-determinable

14

impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R.

15

§§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant

16

produces medical evidence of an underlying impairment, the ALJ may not discredit the

17

claimant's testimony as to the severity of symptoms solely because they are unsupported by

18

objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

19

Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and

20

convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*,

21

157 F.3d at 722.

22

When evaluating a claimant's credibility, the ALJ "must specifically identify what

23

testimony is credible and what testimony undermines the claimant's complaints." *Greger*, 464

24

F.3d at 972 (internal quotation omitted). General findings are insufficient. *Smolen*, 80 F.3d at

25

1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility

26

evaluation" including the claimant's reputation for truthfulness, inconsistencies in his

01 | testimony or between his testimony and conduct, his daily activities, work record, and

02 | testimony from physicians and third parties concerning the nature, severity, and effect of the

03 | symptoms of which claimant complains. *Smolen*, 80 F.3d at 1284.

04 | Here, there are no allegations that plaintiff was malingering, so the ALJ was required

05 | to provide clear and convincing reasons for rejecting his testimony. *Reddick*, 157 F.3d at 722.

06 | The ALJ failed to meet her "clear and convincing" burden when she discredited the plaintiff's

07 | testimony and medical records regarding his impairments in social functioning because "he

08 | [testified] that he occasionally attends church and visits neighbors or his landlord," and is "able

09 | to read, cook, exercise, and socialize." AR at 18. The ALJ apparently found plaintiff's

10 | statements concerning his impairments "not entirely credible" because she believed that the

11 | above-quoted activity was inconsistent with plaintiff's alleged inability to maintain social

12 | functioning, concentration, persistence or pace in a work environment. However, these

13 | categories are not necessarily mutually exclusive. The fact that plaintiff can infrequently

14 | attend church, cook meals once a week, grocery shop once a month, or engage in an

15 | occasional conversation with his landlord does not mean he is capable of continuously and

16 | consistently performing in a structured work environment. *See* 20 C.F.R. § 404, Subpt. P.,

17 | App. 2, § 200.00(c) (defining RFC as "the maximum degree to which the individual retains

18 | the capacity for *sustained* [work].") (emphasis added). Such reasons offered by the ALJ are

19 | insufficient for rejecting plaintiff's testimony. On remand, the ALJ should be required to

20 | evaluate plaintiff's testimony properly, or provide clear and convincing reasons for rejecting it.

21 | C.     ALJ Erred by Failing to Call a Vocational Expert at Step Five

22 | Plaintiff argues that the ALJ erred by failing to hear testimony from a Vocational

23 | Expert (VE) at step five of the sequential evaluation process despite the presence of significant

24 | non-exertional impairments. Dkt. No. 15 at 15-16; Dkt. No. 18 at 2-3. The Commissioner

25 | responds that the ALJ was not required to call a VE and was permitted to rely on the

26 |

REPORT AND RECOMMENDATION
PAGE - 13

01 | framework of the Medical-Vocational Guidelines because she properly found plaintiff capable

02 | of performing unskilled work.  Dkt. No. 17   at 11-13.

03 | When a clamaint has established he suffers from a severe impairment that prevents him

04 | from performing any work he has done in the past, the claimant has made a *prima facie*

05 | showing of disability.  "At this point—step five—the burden shifts to the Commissioner to

06 | show that the claimant can perform some other work that exists in 'significant numbers' in the

07 | national economy, taking into consideration the claimant's residual functional capacity, age,

08 | education, and work experience."  *Tackett*, 180 F.3d at 1100 (citing 20 C.F.R. §

09 | 404.1560(b)(3)).  Ordinarily, the Commissioner can meet this burden in one of two ways:  (a)

10 | by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational

11 | Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 ("Guidelines").

12 | The Guidelines are a matrix system used to determine whether substantial gainful work

13 | exists for claimants with substantially uniform levels of impairment.  *Tackett*, 180 F.3d at

14 | 1101.  The Guidelines categorize work by exertional level (sedentary, light, or medium) and

15 | contain various factors relevant to a claimant's ability to find work, including age, education,

16 | and work experience.  When a claimant's qualifications correspond to job requirements, the

17 | Guidelines direct a conclusion of whether work exists that the claimant could perform, and if

18 | such work exists, the claimant is considered not disabled.

19 | Because the Guidelines categorize jobs by their physical exertion requirement, their use

20 | is appropriate when it is established that a claimant suffers from exertional impairments.  Thus,

21 | when a plaintiff suffers from significant *non*-exertional impairments, resort to the Guidelines is

22 | inappropriate, and the ALJ may not mechanically apply them to direct a finding of disability.

23 | *See Widmark*, 454 F.3d at 1069 ("[T]he ALJ may rely on the Guidelines alone 'only when the

24 | [Guidelines] accurately and completely describe the claimant's abilities and limitations.'")

25 | (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)); *Bruton v. Massanari*, 268 F.3d

26 | 824, 827 (9th Cir. 2001) (same).  Instead, the ALJ must use the principles in the appropriate

REPORT AND RECOMMENDATION
PAGE - 14

01 | sections of the regulations to determine whether the claimant is disabled.   *Tackett*, 180 F.3d at

02 | 1101-02; SSR 85-15, 1985 WL 56857, at *1.  Furthermore, when an ALJ uses the Guidelines

03 | as a framework to evaluate non-exertional limitations not specifically contemplated by the

04 | Guidelines, she must call upon a VE.  *Tackett*, 180 F.3d at 1102.  In such a scenario, the ALJ

05 | must provide the VE with an accurate and detailed description of the claimant's impairments,

06 | as reflected by the medical evidence of record.  *Id.* at 1101.[5]

07 | Here, the ALJ failed to call a VE at step five after finding plaintiff suffered from severe

08 | non-exertional impairments at step two.  AR at 16, 20.  Instead, and without any assistance,

09 | citation, or explanation, the ALJ concluded that plaintiff's "non-exertional limitations . . .  do

10 | not substantially erode the occupational base of unskilled work."  AR at 21.  Because

11 | plaintiff's severe impairments were purely non-exertional, the ALJ should have called a VE to

12 | determine exactly what work plaintiff was capable of performing.  Rather than doing so, it

13 | appears that the ALJ summarily discounted the effects of plaintiff's severe impairments and

14 | instead used the Guidelines to make her own quasi-expert determination that plaintiff was not

15 | disabled.

16 | The ALJ's failure to call a VE constitutes reversible error.  *Tackett*, 180 F.3d at 1102.

17 | In light of the deficiencies associated with the ALJ's decision at step five, the Court makes no

18 | finding on the propriety of the ALJ's conclusion that plaintiff's non-exertional limitations

19 | would not significantly erode the occupational base considered in section 204.00 of the

20 | Medical-Vocational Guidelines.  Although the Court is skeptical that a VE could find, in light

21 | of the conclusions of Dr. Kent and the balance of medical evidence, that claimant's

22 |

23 |      [5]  The Commissioner may meet this step five burden by propounding to the VE a

24 | hypothetical question that, at the very least, adequately reflects all the claimant's impairments and limitations supported by substantial evidence in the record.  *Magallanes*, 881 F.2d at 756-

25 | 57.  Using the VE, the ALJ must determine whether plaintiff is capable of his past relevant work, and if not, whether his relevant work skills are transferable to other jobs.  If such skills

26 | are not transferable, the ALJ must then determine whether the plaintiff is capable of performing any unskilled work.  SSR 85-15.

REPORT AND RECOMMENDATION
PAGE - 15

01  impairments do not substantially erode the occupational base of unskilled work, enabling

02  performance of various types of work that exists in significant numbers in the national

03  economy, this determination lies first with the ALJ on remand. *Thomas*, 278 F.3d at 954.

04      On remand, the ALJ must require a VE to provide testimony concerning the full

05  vocational impact of all plaintiff's impairments, including his difficulties maintaining

06  concentration, persistence or pace, his ability to respond to supervisors, and his ability to

07  maintain social functioning.  The VE should also testify as to the availability of jobs in the

08  economy, if any, for which plaintiff is qualified.

09                              VIII.   CONCLUSION

10      Because the ALJ erred in her evaluation of medical evidence, erred in her step four

11  analysis, erred by failing to hear testimony from a vocational expert at step five, and

12  improperly discredited plaintiff's subjective symptom complaints, this case should be

13  REVERSED and REMANDED for further proceedings not inconsistent with this report and

14  recommendation.  In particular, the ALJ should reevaluate the medical evidence, reassess

15  plaintiff's credibility, apply the "special technique" for evaluating mental impairments under 20

16  C.F.R. § 416.920a, give proper weight to the opinions of Dr. Kent, and finally, hear testimony

17  from a VE concerning the full vocational impact of all plaintiff's impairments based on, among

18  other things, a reassessment of plaintiff's RFC.  This testimony shall include answering a

19  hypothetical that takes into account all of plaintiff's limitations found after considering this

20  additional evidence.  With this information, the ALJ should then apply all appropriate steps of

21  the sequential evaluation process to determine whether plaintiff's severe impairments render

22  him disabled for purposes of Title XVI of the Social Security Act, 42 U.S.C. § 1382(a).  A

23  proposed order accompanies this report and recommendation.

24

25

26

REPORT AND RECOMMENDATION
PAGE - 16

01

02       DATED this 9th day of November, 2006.

03

04                                              _James P. Donohue_____
                                                JAMES P. DONOHUE
05                                              United States Magistrate Judge

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION
PAGE - 17